UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARC BERRY,

                    Petitioner,

                                        Case No. 1:08-cv-912
v.                                      Hon. Gordon J. Quist

MARY BERGHUIS,

                    Respondent.

_____/

## REPORT AND RECOMMENDATION

On April 24, 2006, Petitioner Berry filed a Petition for Writ of Habeas Corpus

pursuant to 28 U.S.C. § 2254.  *See Berry v. Berghuis*, No. 5:06-cv-65 (W.D. Mich.) ("*Berry I*").  The

petition filed in *Berry I* was dismissed to allow Berry an opportunity to exhaust claims in the state

court. Berry re-filed his petition on July 11, 2008, resulting in the present habeas action.[1]

### I.      Background

Petitioner's underlying state criminal conviction has a lengthy procedural history.

Petitioner appeared for a preliminary examination in Detroit's 36th District Court on March 11,

2003.  *See* Prel. Exam. Trans (docket no. 23).  The judge found probable cause that petitioner

committed the charged offenses of possession with intent to deliver 650 or more grams of a mixture

of cocaine, and felony firearm, and bound him over the Wayne Circuit that day.  *Id.* at pp. 3 and 93.

During the course of the criminal proceedings, petitioner moved to suppress items seized from his

residence and statements made to authorities.  These motions were the subject of evidentiary

---

[1] Respondent's answer bears the caption "*Marc Berry v. Douglas Vasbinder.*"  The court notes that
while petitioner's custodian apparently changed since he filed *Berry I*, the court's docket sheet retains the
name of the original respondent, Mary Berghuis.

hearings in May 2003.  *See* Evid. Hear. Trans. (May 2, 2003) (docket no. 24); Evid. Hear. Trans. (May 13, 2003) (docket no. 25); Evid. Hear. Trans. (May 23, 2003) (docket no. 26).  On June 5, 2003, the trial court denied petitioner's motions to suppress evidence seized during the search of his residence and to suppress his statement given to authorities.  *See People v. Marc A. Berry*, No. 03-003180-01 (Opinion and order denying motion to suppress evidence) (Opinion and order denying motion to suppress statements) (Wayne Cir. Ct. June 5, 2003) (docket no. 30).  Petitioner contested the rulings in an interlocutory appeal in the Michigan Court of Appeals.  *See People v. Marc Anthony Berry*, No. 249364 (Mich. App.) (docket no. 30).  Shortly thereafter, the trial court denied a motion to stay the proceedings to allow petitioner to pursue that interlocutory appeal.  *See* Motion Trans. (June 27, 2003) (docket no. 27).

On July 8, 2003, while the interlocutory appeal was pending, petitioner entered a conditional no contest plea to possession with intent to deliver 650 grams or more of cocaine, M.C.L. § 333.7401(2)(a)(i) and felony firearm, M.C.L. 750.227b.  *See* Plea Trans. (docket no. 28). As part of the conditional plea, the trial court identified two adverse pre-trial rulings preserved for appeal: (1) the trial court's ruling on petitioner's motion to suppress the evidence seized pursuant to the search of his residence; and (2) the trial court's ruling on petitioner's motion to suppress his statement given to authorities.  *See* Plea Trans. at p. 15.  On July 21, 2003, the court again acknowledged the entry of the conditional plea and then sentenced petitioner to a term of 15 to 25 years imprisonment for the drug conviction and a 2-year consecutive sentence for the felony firearm conviction.  *See* Sentencing  Trans. (docket no. 29).

On July 23, 2003, petitioner's interlocutory appeal was dismissed without prejudice. *See People v. Marc Anthony Berry*, No. 249364 (Mich. App. July 23, 2003) (docket no. 30).  Several

2

months later, petitioner filed a delayed application for leave to appeal his conviction, in which he

contested the trial court's rulings on the motions to suppress evidence.  Petitioner, through counsel,

raised the following issues:

> I.      Did the continuous search of [petitioner's] home as a victim of a shooting,
> after [petitioner] was taken to the hospital and after it was determined that the house
> was clear by investigative officers without a search warrant and without consent, a
> violation of [petitioner's] Fourth Amendment rights to be free from unlawful search
> and seizures?
>
> > A.      Did the custodial arrest of [petitioner], while the victim of a
> > shooting, change the nature of the search of his home from an exigent
> > circumstance after he was removed and no perpetrators were present?
>
> II.     Did the taking of [petitioner's] statement within a few hours of his surgery
> and immediately after surgery and while on a morphine drip render the statement
> given a violation of [petitioner's] Fifth Amendment rights make the statements
> involuntary?

*People v. Marc Anthony Berry*, No. 256826 (Mich. App.) (Application for leave to appeal) (docket

no. 31).  The Michigan Court of Appeals denied the application for lack of merit in the grounds

presented.  *Id.* (Order, Oct. 31, 2004).  Petitioner raised the same issues in his application for leave

to appeal to the Michigan Supreme Court, which was also denied.  *People v. Marc Anthony Berry*,

No. 127214 (Mich. May 31, 2005) (docket no. 32).

On April 24, 2006, Berry filed a petition for writ of habeas corpus in this court.

*Berry v. Berghuis*, No. 5:06-cv-65 (W.D. Mich.).  The court dismissed the petition on May 23, 2006,

because it included new and unexhausted claims of ineffective assistance of trial counsel and

ineffective assistance of appellate counsel.  *Id.*  (Opinion and Judgment) (docket nos. 5 and 6).

Consistent with the court's ruling, petitioner filed a motion in the trial court for relief

from the judgment on the newly asserted grounds of ineffective assistance of trial and appellate

counsel.  The trial court denied petitioner's claims, stating in pertinent part as follows:

Here, in support of his claim for ineffective assistance of trial counsel, defendant alleges that trial counsel: (1) failed to sufficiently investigate, prepare and present his fourth amendment claim; (2) failed to interview available witnesses; and (3) failed to obtain and/or utilize impeachment evidence. However, defendant has not shown that trial counsel's performance affected the outcome of the plea process, or that but for the alleged errors, he would not have pled guilty [sic] but would have insisted on going to trial. Therefore, defendant's claim for ineffective assistance of trial counsel must fail.

Defendant also contends that he was denied the effective assistance of appellate counsel claiming that appellate counsel failed to raise the issues discussed above. This contention fails since the sole remedy would be the granting of a new appeal which this Court lacks the authority to do. See: *People v Oster*, 97 Mich App 122; 294 NW2d 253 (1980).

Having failed to establish entitlement to the relief requested, defendant's motion for relief from judgment is denied.

*People v. Marc A. Berry*, No. 03-003180-01 (Opinion and Order denying motion for relief from judgment) (Wayne Cir. Ct. Aug. 8, 2006) (docket no. 33).

Petitioner raised the issues of ineffective assistance of trial and appellate counsel in his application for leave to appeal to the Michigan Court of Appeals (in his words):

I.    Was [petitioner] deprived of his Sixth Amendment right to effective assistance of trial counsel when counsel failed to sufficiently investigate: prepare and present adequately and litigate his Fourth Amendment claim; when counsel failed to consult with and interview available witnesses: when counsel failed to obtain and/or utilize critical impeachment material, in short, did counsel fail to insure that her client's Fourteenth Amendment right to due process and right to a fair trial was adequately protected.

II.    Was [petitioner] denied his Sixth Amendment right to effective assistance to appellate counsel, where his appellate counsel failed to raise ineffective assistance of trial counsel.

*People v. Marc Anthony Berry*, No. 279663 (Mich. App.) (Application for leave to appeal) (docket no. 33). The Michigan Court of Appeals denied petitioner's application for failing to establish entitlement to relief under MCR 6.508(D). *Id.* (Order, Nov. 15, 2007). Petitioner raised the same

4

issues in his application for leave to appeal to the Michigan Supreme Court, which also denied petitioner's application for failing to establish entitlement to relief under MCR 6.508(D). *People v. Marc Berry*, No. 135534 (Mich. June 23, 2008) (docket no. 34).

Approximately three weeks later, Berry re-filed his petition for writ of habeas corpus in the Eastern District of Michigan. *See* Petition (docket no. 1). After the action was transferred to this district, Berry filed an amended habeas petition seeking relief on four grounds:

I.    The continuous search of [petitioner's] home after [he] was taken to the hospital with a gun shot wound.

II.   The taking of [petitioner's] statement after a few hours of surgery and while on morphine drip.

III.  Ineffectiveness of trial counsel.

IV.   Ineffectiveness of appellate counsel.

Amend. Pet. (docket no. 13). These are the four issues presently before the court.

## II.    Procedural default

Respondent contends that petitioner's Issue III (ineffective assistance of trial counsel) is barred from habeas review under the procedural default doctrine. Where "a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). A procedural default "provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice." *Gray v.*

*Netherland*, 518 U.S. 152, 162 (1996).  Not every state procedural rule will warrant application of the procedural default doctrine.  Only a procedural rule that was "'firmly established and regularly followed' by the time as of which it [was] to be applied," *Ford v. Georgia*, 498 U.S. 411, 424 (1991), will support application of the doctrine.  "For a habeas claim to be procedurally defaulted on the basis of a state procedural rule, the petitioner must have violated a procedural rule, but the state court must also have based its decision on the procedural default." *Simpson v. Jones*, 238 F.3d 399, 407 (6th Cir. 2000).

   Petitioner first raised his habeas claims with respect to ineffective assistance of trial counsel in his motion for relief from judgment brought pursuant to MCR 6.500 *et seq.*  Both the Michigan Court of Appeals and the Michigan Supreme Court denied petitioner's application for leave to appeal these claims because he failed to meet the burden of establishing entitlement to relief under MCR 6.508(D).  The Sixth Circuit has held that MCR 6.508(D) is a valid procedural bar for habeas purposes.  *See Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005); *Burroughs v. Makowski*, 282 F.3d 410, 414 (6th Cir. 2002); *Simpson*, 238 F.3d at 407-08; *Luberda v. Trippett*, 211 F.3d 1004, 1008 (6th Cir. 2000).  Consequently, a habeas petitioner's claims are procedurally defaulted in those cases in which the Michigan Supreme Court expressly relies on MCR 6.508(D) in denying an application for leave to appeal.  *Id.*

   As the last state court rendering judgment in the case, the Michigan Supreme Court's decision denying petitioner's ineffective assistance of counsel claim on the basis of the state procedural bar of MCR 6.508(D) precludes habeas review.  *See Howard*, 405 F.3d  at 477; *Burroughs*, 282 F.3d at 414; *Simpson*, 238 F.3d 407.  Accordingly, this claim is procedurally defaulted for purposes of federal habeas review.

6

Habeas review of a procedurally defaulted claim is precluded unless petitioner can demonstrate "cause for the default and actual prejudice as a result of the alleged violation of federal law," or that a failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750. "[T]he existence of cause for a procedural default must turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986).

Petitioner asserts ineffective assistance of appellate as cause to excuse this procedural default. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set forth a two-prong test to determine whether counsel's assistance was so defective as to require reversal of a conviction: (1) the defendant must show that counsel's performance was deficient and (2) the defendant must show that counsel's deficient performance prejudiced the defense, i.e., "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland,* 466 U.S. at 687. In making this determination, the court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690. "[T]he threshold issue is not whether [petitioner's] attorney was inadequate; rather, it is whether he was so *manifestly* ineffective that defeat was snatched from the hands of probable victory." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992) (emphasis in original), *cert. denied* 508 U.S. 975 (1993). Under *Strickland*, the reviewing court's scrutiny of counsel's performance is highly deferential, and the court is to presume that counsel rendered adequate assistance and made decisions with reasonable professional judgment. *Strickland*, 466 U.S. at 689-690.

Appellate counsel enjoys a strong presumption that the alleged ineffective assistance falls within the wide range of reasonable professional assistance. *See Willis*, 351 F.3d at 745, *citing Strickland*. It is not necessary for appellate counsel to raise every non-frivolous claim on direct appeal. *Smith v. Murray*, 477 U.S. 527, 536 (1986); *Jones v. Barnes,* 463 U.S. 745 (1983). On the contrary,

> Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues.

*Jones*, 463 U.S. at 751-52. It is well-recognized that the effect of adding weak arguments to an appellate brief "will be to dilute the force of the stronger ones." *Id.* at 752, *quoting* R. Stern, *Appellate Practice in the United States* 266 (1981). "[I]f you cannot win on a few major points, the others are not likely to help, and to attempt to deal with a great many in the limited number of pages allowed for briefs will mean that none may receive adequate attention." *Id.* "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of counsel be overcome." *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir.1986).

To evaluate a claim of ineffective assistance of appellate counsel, the court assesses the strength of the claim appellate counsel failed to raise. *Wilson v. Parker*, 515 F.3d 682, 707 (6th Cir. 2008). "Counsel's failure to raise an issue on appeal could only be ineffective assistance if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal." *McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir.2004). If there is a reasonable probability that petitioner would have prevailed on appeal had the claim been raised, then this court can consider whether the claim's merit was so compelling that appellate counsel's failure to raise it amounted to ineffective assistance of appellate counsel." *Id.* at 700. In this regard, appellate counsel cannot be found to be ineffective for failing to raise an issue that lacks merit. *Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010); *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001). "Furthermore, the *Strickland* analysis 'does not require an attorney to raise every non-frivolous issue on appeal.'" *Shaneberger*, 2010 WL 2794195 at *3, quoting *Caver v. Straub*, 349 F.3d 340, 348-49

8

(6th Cir.2003). As a practical matter, of course, this approach requires the court to address the merits the issue regardless of whether it was raised on direct appeal.

Here, petitioner claims that the he was deprived of his Sixth Amendment right to effective assistance of trial counsel when counsel: failed to sufficiently investigate his case; failed to adequately litigate his Fourth Amendment claim; failed to consult with and interview available witnesses; failed to obtain or utilize critical impeachment material; and failed to insure that petitioner's Fourteenth Amendment right to due process and right to a fair trial were adequately protected. Petitioner's claim fails, however, because he entered into a valid no contest plea.

A knowing and voluntary guilty plea waives all non-jurisdictional defects in the criminal proceedings. *Tollett v. Henderson*, 411 U.S. 258, 266-67 (1973). This waiver includes claims of ineffective assistance of counsel that relate to alleged constitutional violations that do not attack the voluntary or intelligent nature of the plea. *United States v. Stiger*, 20 Fed. Appx. 307, 308-9 (6th Cir. 2001), citing *United States v. Bohn*, 956 F.2d 208, 209 (9th Cir. 1992) (pre-plea ineffective assistance of counsel claims are waived by entry of a guilty plea). "Like a plea of guilty, a plea of nolo contendere constitutes a waiver of all so-called non-jurisdictional defects or, more accurately, any claims not logically inconsistent with the issue of factual guilt, as well as the right to contest the factual merits of the charges against him." *United States v. Freed*, 688 F.2d 24, 25 (6th Cir. 1982) (internal quotation marks omitted).

> [A] no-contest plea is generally considered to be a hybrid form of a guilty plea because it avoids a trial, requires the defendant to waive various trial rights, and results in the imposition of criminal liability. *United States v. Heller*, 579 F.2d 990, 992 n. 1 (6th Cir.1978) (a no-contest plea "waive[s] non-jurisdictional defects to the conviction"); *Pharr v. United States*, 48 F.2d 767, 770 (6th Cir.1931) ("For all practical purposes, the plea of nolo contendere is one of guilt.").

*United States v. Whitelaw*, 376 Fed.Appx. 584, 589 (6th Cir. 2010).

Here, petitioner's no contest plea was conditional, however, on his ability to appeal two issues regarding the suppression of evidence. Under Michigan law, the issues preserved in a conditional plea must be set forth with specificity:

9

> A defendant may enter a conditional plea of guilty, nolo contendere, guilty but mentally ill, or not guilty by reason of insanity.  A conditional plea preserves for appeal a specified pretrial ruling or rulings notwithstanding the plea-based judgment and entitles the defendant to withdraw the plea if a specified pretrial ruling is overturned on appeal.  The ruling or rulings as to which the defendant reserves the right to appeal must be specified orally on the record or in a writing made a part of the record.  The appeal is by application for leave to appeal only.

MCR 6.301(C)(2).  *Cf. United States v. Mendez-Santana*, -- F.3d --, 2011 WL 1901545 at *5 (6th Cir. May 20, 2011) (discussing importance of identifying issues collateral to the determination of guilt or innocence that are preserved for appeal in a conditional guilty plea because such a plea represents an exception to the general rule that a guilty plea admits all averments of fact in the indictment, cures all non-jurisdictional defects, waives all defenses, and relieves the prosecution from the duty of proving any facts).

Petitioner's conditional plea preserved two discrete issues: (1) the trial court's ruling on petitioner's motion to suppress the evidence seized pursuant to the search of his residence; and (2) the trial court's ruling on petitioner's motion to suppress his statement given to authorities.  *See* Plea Trans. at p. 15.  Petitioner's appellate counsel addressed these two preserved issues on appeal. Because petitioner's plea did not preserve any other issues, appellate counsel cannot be found ineffective for failing to raise additional, unpreserved issues.  *See Shaneberger*, 615 F.3d at 452 (appellate counsel cannot be found to be ineffective for failing to raise an issue that lacks merit); *Greer*, 264 F.3d at 676 (same).

Furthermore, appellate counsel had no basis to raise petitioner's claim of ineffective assistance of trial counsel, because this claim was waived by petitioner's  knowing and voluntary no contest plea.  *See Tollett*, 411 U.S. at 266-67.  Where a criminal defendant pleads guilty (or no contest), the test for determining the validity of a guilty plea under the federal constitution is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant."  *Hill v. Lockhart*, 474 U.S. 52, 56 (1985). *See Hart v. Marion Correctional Facility*, 927 F.2d 256, 257 (6th Cir. 1991) (to satisfy the dictates of due process, a plea "must be a voluntary, knowing, intelligent act").  The trial transcript reflects that petitioner's plea

10

was a voluntary and intelligent act.  Petitioner testified that he understood the plea agreement; that no other promises were made indicating that he would receive some other benefit from the plea; and that he understood the charges.  Plea Trans. at pp. 4-7.  Petitioner also testified that he was giving up his right to a jury trial; his right to a bench trial; his presumption of innocence; his right to require the prosecutor to prove guilt beyond a reasonable doubt; his right to have witnesses appear at trial; his right to have the court order witnesses to appear at his trial; his right to remain silent; his right to testify at trial; and his right to appeal his conviction and sentence.  *Id.* at pp. 7-9.  After petitioner pled no contest to the charges of possession with intent to deliver a mixture weighing more than six hundred fifty grams containing cocaine and felony firearm, petitioner testified that he understood the pleas and understood that he was giving up the rights previously discussed.  *Id.* at p. 10.  Petitioner further testified that it was his choice to enter into the pleas; that no one threatened him to make the pleas; that no one promised him anything beyond what was in the plea agreement; that no one used undue influence or force against petitioner causing him to plead guilty; that he offered his pleas "freely and voluntarily;" that there were no undisclosed promises related to his pleas; and that he had not taken any medicines, drugs, intoxicants or alcohol that were affecting him at that time.  *Id*. at pp. 10-11.  The government then presented a factual basis for the plea, citing the preliminary examination transcript and an investigator's report.  *Id*. at pp. 11-14.

The court questioned the prosecutor and petitioner's counsel to confirm that there were no promises, threats or inducements not disclosed on the record, and to confirm that the court complied with the applicable court rules with respect to a plea.  *Id*. at pp. 14-15.  Both counsel stated that there were no undisclosed promises and that they were satisfied with the court's compliance with the court rules regarding pleas.  *Id*.  The court also advised petitioner that the court's ruling on petitioner's motion to suppress the evidence seized during the search of his residence and the issues raised in his motion to suppress were preserved for appeal.  *Id*. at p. 15.  Finally, the court accepted petitioner's plea as made voluntarily and with understanding, with no undue influence, compulsion

or duress, and that no promises had been made except as stated in the plea agreement. *Id*. at pp. 15-16. Accordingly, petitioner has not demonstrated cause for his procedural default.

Petitioner's failure to demonstrate cause prevents federal review of his habeas claims unless the court's failure to do so will result in a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. In *Schlup v. Delo*, 513 U.S. 298, 321 (1995), the Supreme Court described the scope of the fundamental miscarriage of justice exception:

> To ensure that the fundamental miscarriage of justice exception would remain "rare" and would only be applied in the "extraordinary case," while at the same time ensuring that the exception would extend relief to those who were truly deserving, the Court explicitly tied the miscarriage of justice exception to the petitioner's innocence.

To meet the threshold requirement for actual innocence, a petitioner must persuade the court "that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id*. at 329. In the procedural default context, "'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623-24 (1998). "To be credible, such a claim [of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup*, 513 U.S. at 324. Claims of actual innocence are rarely successful because such evidence is unavailable in the vast majority of cases. *Id.* Petitioner offers no such new evidence that he is actually innocent of the crime for which he was convicted. He has failed to meet the fundamental miscarriage of justice exception. Accordingly, petitioner's ineffective assistance of trial counsel claim raised in Issue III is procedurally barred and not subject to habeas review.

## III. Standard of review under 28 U.S.C. § 2254

Petitioner seeks relief under 28 U.S.C. §2254, which provides that "a district judge shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." Before petitioner may seek such relief in

federal court, however, he must first fairly present the substance of his claims to all available state courts, thereby exhausting all state remedies.  *Picard v. Connor*, 404 U.S. 270, 277-78 (1981); *Clemmons v. Sowders*, 34 F.3d 352, 354 (6th Cir. 1994); *see* 28 U.S.C. §2254(b)(1)(A).  Petitioner has met the exhaustion requirement with respect to habeas claims I, II and IV.

Where the state court has adjudicated a claim on its merits, the federal district court's habeas corpus review is limited by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which provides in pertinent part that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication–
>
> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established Federal law if the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decided the case differently than a Supreme Court decision based upon a set of materially indistinguishable facts.  *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000); *Lopez v. Wilson*, 426 F.3d 339, 341 (6th Cir. 2005) (*rehearing en banc*).  An unreasonable application of clearly established Federal law occurs "when the state court identified the correct legal principle from the Supreme Court but unreasonably applied the principle to the facts of the case before it." *Id.*

A determination of a factual issue by a state court is presumed to be correct.  28 U.S.C. § 2254(e)(1).  A habeas petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence that the state court's determination was erroneous.  *Magana v. Hofbauer*, 263 F.3d 542, 546-47 (6th Cir. 2001).

13

## IV.     Discussion

### A.     The continuous search of petitioner's home after he was taken to the hospital with a gun shot wound (Issue I)

Petitioner's claim that evidence was obtained through an unconstitutional search and seizure is not cognizable on federal habeas review.   In *Stone v. Powell*, 428 U.S. 465, 494 (1976), the Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that the evidence obtained in an unconstitutional search or seizure was introduced at trial."   The record reflects that petitioner had an opportunity to litigate the suppression of the evidence in the state courts.   Accordingly, he cannot seek habeas relief based upon an alleged unconstitutional search and seizure.  *See Stone*, 428 U.S. at 494.

### B.     The taking of petitioner's statement after a few hours of surgery and while on morphine drip (Issue II).

### 1.     Legal standard

Petitioner contends that he gave an involuntary statement in violation of the Fifth Amendment.   The Fifth Amendment privilege against compulsory self-incrimination bars the admission of involuntary confessions against the accused. *Jackson v. Denno,* 378 U.S. 368, 376 (1964); *Finley v. Rogers*, 116 Fed. Appx. 630, 635 (6th Cir. 2004).   The voluntariness of a confession is a mixed question of law and fact. *Thompson v. Keohane*, 516 U.S. 99, 108-11. "The ultimate question whether, under the totality of the circumstances, the challenged confession was obtained in a manner compatible with the requirements of the Constitution is a matter for independent federal determination." *Miller v. Fenton*, 474 U.S. 104, 112 (1985).   However, "subsidiary factual questions, such as . . . whether in fact police engaged in the intimidation tactics alleged by the defendant 'are entitled to the presumption of correctness.'" *Id.* (applying predecessor to § 2254(e)).

Under clearly established Supreme Court law, "certain interrogation techniques, either in isolation or as applied to the unique characteristics of a particular suspect, are so offensive

14

to a civilized system of justice that they must be condemned under the Due Process Clause of the Fourteenth Amendment." *McCalvin v. Yukins*, 444 F.3d 713, 719 (6th Cir. 2006), quoting *Miller,* 474 U.S. at 109.  The question in such cases is whether a suspect's will was overborne at the time he confessed, which requires the Court to look at the totality of the circumstances surrounding the confession. *McCalvin*, 444 F.3d at 719, citing *Schneckloth v. Bustamonte,* 412 U.S. 218, 226 (1973), and *Reck v. Pate,* 367 U.S. 433, 440 (1961).  The "totality of all the surrounding circumstances" refers to both the characteristics of the accused and the details of the interrogation.  *Dickerson v. United States*, 530 U.S. 428,  434 (2000);  *United States v. Mahan*, 190 F.3d 416, 422 (6th Cir.1999).

A non-exhaustive list of the factors applied in determining the "totality of the circumstances" includes: (1) the "crucial element of police coercion," (2) the youth of the accused, (3) his lack of education, (4) his low intelligence, (5) the lack of any advice to the accused of his constitutional rights, (6) the length of detention, (7) the repeated and prolonged nature of the questioning, (8)  the use of physical punishment such as the deprivation of food or sleep, (9) the location of the interrogation, (10) the defendant's maturity, and (11) physical condition, and (12) mental health. *Withrow v. Williams*, 507 U.S. 680, 693 (1993);  *Schneckloth*, 412 U.S. at 226.  To the extent that petitioner argues that his *Miranda* waiver was not knowing or intelligent, the test for whether a *Miranda* waiver is voluntary is essentially the same as the test for whether a confession is voluntary.  "There is obviously no reason to require more in the way of a 'voluntariness' inquiry in the *Miranda* waiver context than in the Fourteenth Amendment confession context."  *Colorado v. Connelly*, 479 U.S. 157, 169-170 (1986).

### 2.        State court decision

The trial court addressed petitioner's motion to suppress as follows:


I

Defendant is charged with possession with intent to deliver in excess of 650 grams of cocaine [MCL 333.7401(2)(a)(i)] and felony firearm [MCL 750.227b].

On February 12, 2003 and February 14, 2003, Defendant was interviewed at Sinai Grace Hospital in Detroit, Michigan by Sergeant James Tolbert of the Detroit Police Department regarding being shot at 15376 Prest in the City of Detroit and the 33 kilograms of cocaine, $98,000 in cash and firearms found in his residence pursuant to a search.

A motion to suppress Defendant's statements was filed seeking an evidentiary hearing on the issue of whether the statements were voluntary. Pursuant to People v Walker, 374 Mich 331 (1965), an evidentiary hearing on Defendant's instant motion was conducted on May 13, 2003 and May 23, 2003. Testifying at the hearing were Sergeant James Tolbert, Defendant Marc Berry, Thomas C. Richert, an investigator at Sinai Grace Hospital, and Dr. Ilan Rubinfeld, a trauma surgeon at Sinai Grace Hospital.

It is Defendant's contention that he has no recollection of being interviewed at the hospital by Sergeant Tolbert or talking to him to signing anything, including a waiver of rights because he had recently undergone surgery seven hours prior to questioning, and was being administered morphine for pain.

II

The voluntariness of a statement is to be determined from the totality of the circumstances. People v Conte, 426 Mich 704 (1984). The People must prove by a preponderance of the evidence that the confession was voluntary. People v Sears, 124 Mich App 735 (1983).

Defendant had sustained a gunshot wound to his right leg on the evening of February 11, 2003. The surgery performed on his leg to relieve  swelling and bleeding at Sinai Grace Hospital commenced at 2:00 a.m. on February 12, 2003 and was completed at 3:30 a.m. Defendant underwent general anesthesia, was intubated and given muscle relaxants, a narcotic and other short acting agents. Prior to the surgery, Defendant had received morphine twice, 5 milligrams at 11:20 p.m. and 5 milligrams at 11:50 p.m. on the night of February 11, 2003. Following the surgery, Defendant received a 2 milligram dose of morphine at 3:45 a.m. on February 12, 2003 and also received morphine automatically dispensed through his IV tube and administered his own dosages 1 milligram every 10 minutes. At 11:28 a.m. on February 12, 2003 he received a loading dose of 2 milligrams of morphine and his dosage through self-administration was increased to 1.5 milligrams at 10 minute intervals. This schedule of medication for morphine remained in effect until February 18, 2003. Defendant was also diabetic but there were no annotations in his

16

medical chart showing negative consequences due to increased blood sugar levels.

At 9:00 a.m. on February 12, 2003, hospital records indicated that Defendant was in pain which had a mild effect on his concentration.  At 9:04 a.m. on February 12, 2003 it was noted in Defendant's records that he was rested after sleep.  At 11:35 a.m. a notation was made that Defendant was oriented times three.

Defendant had been arrested at the hospital around 6:00 a.m. on February 12, 2003.  Detroit police Sergeant Tolbert took a statement from Defendant at the hospital at approximately 10:30 a.m.  Present in the hospital room with Defendant and Sergeant Tolbert was Detroit police officer William Zeolla.  Defendant was given his constitutional rights and signed off on the constitutional rights certificate of notification form as shown by People's Hearing Exhibit No. 13.  According to Sergeant Tolbert's observations, Defendant appeared to be coherent.  Also, he appeared to understand the questions and gave personal information concerning himself and family.  In addition, Defendant also read over the questions and answers without any apparent difficulty and even made corrections as shown on the statement.  Because he was a police prisoner, Defendant was handcuffed to the bed at the time he made the statement.

Shortly after Defendant's statement was made to the police at approximately 11:35 a.m. on February 12, 2003, the hospital records indicate that Defendant was able to furnish hospital personnel with his background and family information.

There was no evidence adduced at the hearing that Defendant did not make the February 14, 2003 statement to the police.

Under the totality of the circumstances as set forth in People v Cipriano, 431 Mich 315, 334 (1988), this court finds that the evidence  adduced at the evidentiary hearing supports a finding that the Defendant was not under the influence of medication or pain to the extent that he could not voluntarily waive his constitutional rights.  Defendant was not in any euphoric state which would cause his will to be overborne.

If the confession is the product of an essentially free and unconstrained choice, then the statement was voluntary.  People v Manning, 243 Mich App 631, 635.

III

Based on the foregoing, this court finds that Defendant's February 12, 2003 and February 14, 2003 statements were voluntary.  Defendant's Motion to Suppress is DENIED.

See People v. Marc A. Berry, No. 03-003180-01 (Opinion and order denying motion to suppress statements) (Wayne Cir. Ct. June 5, 2003) (docket no. 30).  Both the Michigan Court of Appeals and the Michigan Supreme Court denied petitioner's application for leave to appeal the trial court's decision denying the motion.

17

As an initial matter, the trial court's determination of the facts is presumed to be correct. 28 U.S.C. § 2254(e)(1). Petitioner has not rebutted this presumption of correctness by clear and convincing evidence that the state court's determination was erroneous. *Magana*, 263 F.3d at 546-47. Under the totality of the circumstances, the court concludes that petitioner's statement was obtained in a manner compatible with the requirements of the Constitution. *See Miller*, 474 U.S. at 112.

The fact that petitioner was being treated in a hospital does not render his statement involuntary. *See, e.g., Abela v. Martin*, 380 F.3d 915, 928 (6th Cir. 2004) (defendants' statements were found voluntary where he was in the hospital with a broken nose, intoxicated, in pain and on pain medication during police questioning). However, the Supreme Court has found that a defendant's incriminating statement was not voluntary where police coercion was coupled with a serious medical condition and a compromised mental state. *See, e.g.*, *Mincey v. Arizona*, 437 U.S. 385, 397-401 (1978) (defendant's Miranda waiver and statement were coerced and involuntary, where the defendant: was seriously wounded a few hours before the interrogation; described by a physician as "depressed  almost to the point of coma;" housed in the hospital's intensive care unit; complained of "unbearable" pain in his leg; "was evidently confused and unable to think clearly about either the events of that afternoon or the circumstances of his interrogation, since some of his written answers were on their face not entirely coherent;" and was in a hospital bed "encumbered by tubes, needles and breathing apparatus; asked the police officer to desist from the interrogation and "complained several times that he was confused or unable to think clearly, or that he could answer more accurately the next day"; *Beecher v. Alabama*, 389 U.S. 35, 36-38 (1967) (the defendant's two confessions were the product of "gross coercion"; the initial confession was made after the defendant had been shot in the leg and officer pointed a rifle to his head, while the second, written confession, made a week later in prison hospital, was made while defendant was in a "kind of slumber" due to repeated morphine injections and was left alone with investigators by medical

assistant, who warned him to "cooperate" and, in the officers' presence, asked to be informed if the defendant did not tell them what they wanted to know).

Here, petitioner's condition was not as severe as the defendant in *Mincey* (i.e., petitioner appeared to be coherent; he appeared to understand the questions and gave personal information concerning himself and family; he read over the questions and answers without any apparent difficulty; and he made corrections as shown on the statement). In addition, there is no evidence of police coercion as that present in either *Mincey* or *Beecher*. *See Connelly*, 479 U.S. 164-65 ("[a]bsent police conduct causally related to the confession, there is simply no basis for concluding that any state actor has deprived a criminal defendant of due process of law  .  .  .  . while mental condition is surely relevant to an individual's susceptibility to police coercion, mere examination of the confessant's state of mind can never conclude the due process inquiry"). Under the totality of the circumstances, the court agrees with the trial court that petitioner voluntarily waived his constitutional rights in giving the statement to police. The state court's decision was neither contrary to, nor an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254 (d). Accordingly, petitioner is not entitled to relief on this claim.

### C.    Ineffective assistance of appellate counsel (Issue IV)

As previously discussed in § II.B., *supra*, petitioner's claim of ineffective assistance of appellate counsel did not violate the Sixth Amendment. For those same reasons, petitioner is not entitled to habeas relief under § 2254 for his separate claim of ineffective assistance of appellate counsel.

## V.      Recommendation

For these reasons, I respectfully recommend that the habeas petition be **DENIED**.

Rule 8, Rules Governing § 2254 Cases in the United States District Courts.


Dated:  August 19, 2011                          /s/ Hugh W. Brenneman, Jr.
                                                 HUGH W. BRENNEMAN, JR.
                                                 United States Magistrate Judge


ANY OBJECTIONS to this Amended Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).